**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| STACEY QUINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-10168-MJJ |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner, | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

April 17, 2026

JOUN, D.J.

Plaintiff Stacey Quinn ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 205(g) seeking judicial review of the denial of her application for social security disability insurance ("SSDI") benefits by Defendant Carolyn Colvin (the "Commissioner" or "Defendant"), then-Acting Commissioner of the Social Security Administration ("SSA"). *See generally* [Doc. No. 1]. Having exhausted all administrative remedies, Plaintiff now moves the Court to reverse the Commissioner's decision or, in the alternative, to remand the matter for further consideration. [Doc. No. 17]. For the reasons given below, Plaintiff's motion is granted, and the matter is REMANDED. On remand, the ALJ must render a decision in compliance with my instructions below.

---

[1] The Complaint originally named Acting Commissioner Carolyn Colvin. Frank Bisignano is now the Commissioner of the Social Security Administration and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

## I.    BACKGROUND

### A.    <u>Overview of SSDI Benefits</u>

SSDI "provides monthly payments to people who have a disability that stops or limits their ability to work." *Disability*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/disability (last accessed March 23, 2026). If an individual is disabled, they may be eligible to receive benefits.

An individual is said to be disabled for purposes of receiving SSDI benefits if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The SSA uses a five-step sequential evaluation process to determine whether an individual is disabled. *Id.* at § 404.1520. If the claimant is found to be disabled or not disabled at a given step, a decision will be made as to the claimant's disability status and their entitlement to benefits without having to proceed to the next step(s). *Id.* at § 404.1520(a)(4). However, if a determination cannot be made at a given step, the evaluator must proceed to the next step. *Id.*

At step one, the SSA considers the claimant's current work activity. *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition. *Id.* at § 404.1520(a)(4)(i) and (b). At step two, the SSA determines whether the claimant has a medically determinable impairment or combination of impairments that is "severe" within the meaning of the regulations. *Id.* at § 404.1520(a)(4)(ii). An impairment must result from anatomical, physiological, or psychological abnormalities, and must be established by objective medical evidence. *Id.* at § 416.921. Furthermore, an impairment or combination thereof will only be deemed severe if it significantly limits a claimant's physical or

mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled. *Id*. At step three, the SSA determines whether the claimant's impairment(s) meet(s) or medically equal(s) an entry in the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 404.1520(a)(4)(iii). If it does, the claimant is disabled. *Id.* at § 404.1520(d). At step four, the SSA assesses the claimant's residual functional capacity ("RFC") and past relevant work. *Id.* at § 404.1520(a)(4)(iv). If the claimant has the RFC to perform the requirements of past relevant work, she is not disabled. *Id.* at § 404.1520(e). At the fifth and last step, the SSA determines whether the claimant is able to perform any other work given RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If she cannot, she is disabled. *Id.* at § 404.1520(g)(1).

If an application for SSDI benefits is denied, a claimant has four opportunities to appeal. *Appeal a decision we made*, SOC. SECUR. ADMIN., https://www.ssa.gov/apply/appeal-decision-we-made (last accessed April 16, 2026). First, an applicant may ask the SSA to reconsider the denial. *Id.* Second, if the denial is affirmed, the applicant may then appear at a hearing before an Administrative Law Judge ("ALJ"). [*Id.*]. Third, if the ALJ issues an unfavorable decision, an applicant may bring her third appeal to the Appeals Council of the SSA. [*Id.*]. Fourth, if the Appeals Council again denies the application, an applicant as a final measure may file an action in federal district court. [*Id.*].

### B.      Plaintiff's Application For SSDI Benefits

#### 1.      The Initial Application

Plaintiff filed an application for SSDI benefits on September 20, 2021. [Doc. No. 18 at 2]. In her application, Plaintiff alleges disability status due to ten impairments: cirrhosis, major depressive disorder, osteoporosis, hypothyroidism, latent tuberculosis, lung nodules, hereditary

hemochromatosis, secondary esophageal varices with bleeding, gallstones, and early menopause. [Doc. No. 14-5 at 12]. She asserts that her symptoms became so debilitating as to render her disabled starting on October 9, 2020, approximately eleven and a half months prior to the filing of her application. [Doc. No. 14-6 at 2]. That application was denied on May 31, 2022, failing at Step 2 of the disability determination on the basis that Plaintiff's impairments are not sufficiently severe to prevent her from working. [Doc. No. 14-5 at 9–12] ("We have determined that your condition is not severe enough to keep you from working . . . We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.").

### 2.    Appeal #1: Requestion for Reconsideration

Plaintiff filed a request for reconsideration on June 21, 2022. [*Id.* at 18]. She also submitted additional medical records in support of her appeal. [*Id.*]. On December 6, 2022, SSA affirmed the denial, again denying the application at Step 2. [*Id.* at 20–23] ("We have determined that your condition is not severe enough to keep you from working."). In the denial letter, SSA stated that Plaintiff is "able to perform work that does not involve extremely heavy lifting" and "able to perform work that involves simple tasks with limited public contact." [*Id.* at 23].

### 3.    Appeal #2: The Administrative Hearing

On January 9, 2023, Plaintiff requested a hearing with an ALJ. [*Id.* at 31]. Once again, she submitted additional medical records in support of her appeal. [*Id.*].

A hearing before ALJ Francis Hurley ("ALJ Hurley") was conducted on June 1, 2023. [Doc. No. 14-3 at 18]. At the hearing, Plaintiff testified that she experiences constant fatigue and needs to take daily naps. [*Id.* at 24]. She also stated that she suffers from poor sleep, headaches, nausea, and dizziness and that she participates in "limited daily activities." [*Id.*]. She explained

that she struggles with personal care activities such as bathing, hair care, shaving, feeding herself, and using the toilet. [*Id.*]. She further testified that she has limited physical and mental functional capabilities, suffers from excessive nervousness with hand tremors, and uses the bathroom 15-20 times per day. [*Id.* at 24–25].

On January 31, 2024, ALJ Hurley affirmed the denial of Plaintiff's application, though his justification for doing so diverged from that of the two previous examiners beginning at Step 2. *See* [*id.* at 21–22]. ALJ Hurley found that Plaintiff has several medically determinable impairments: cirrhosis of the liver, anxiety disorder, major depressive disorder, GERD, osteoporosis, hypothyroidism, latent tuberculosis, lung nodule, hemochromatosis, and alcohol use sustained remission. [*Id.* at 21]. Unlike the two previous SSA evaluators, he found that three of those impairments—cirrhosis of the liver, anxiety disorder, and major depressive disorder— significantly limit Plaintiff's ability to perform basic work activities and therefore constitute "severe" impairments. [*Id.*]. The remaining impairments are non-severe. [*Id.*].

At Step 3, he considered whether any of Plaintiff's impairments or combinations of impairments equal(s) any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 22–23]. Impairments or combinations thereof that are deemed equivalent to the listings in the relevant regulation are severe enough to conclusively state that a claimant is disabled without the need for further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). However, ALJ Hurley determined that none of Plaintiff's impairments or combinations of impairments were medical equivalents to the impairments listed in the regulation. [Doc. No. 14-3 at 22–23]. Consequently, he proceeded to Step 4.

At Step 4, ALJ Hurley assessed Plaintiff's RFC and considered whether she can perform tasks that align with her past work given her RFC. *See* [*id.* at 24–28]. To assess RFC, an ALJ must

first consider whether there are any impairments "that could reasonably be expected to produce the claimant's pain or other symptoms." [*Id.*]. Second, if such impairments do exist, the ALJ must then "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." [Id]. During this second stage, an ALJ must consider whether a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms" are supported by objective medical evidence. [*Id.*] If they are not, the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." [*Id.*].

At Stage One, ALJ Hurley found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. [*Id.* at 25]. However, at Stage Two, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are "not entirely consistent with the medical evidence and other evidence in the record." [*Id.*] ("The objective evidence provides some support to the claimant's allegations. However, it does not support the elevated level of impairment alleged.").

For example, regarding Plaintiff's cirrhosis, ALJ Hurley seems to concede that Plaintiff suffered severe symptoms throughout 2019 and into a portion of 2020. *See* [*id.* at 25] (summarizing medical reports from December 2019, June 2020, September 2020, and October 2020 visits). However, he also notes that later medical examinations show either improved symptoms or few or non-severe limitations resulting therefrom. *See* [*id*.] (explaining that December 2020, March 2021, and October 2021 medical records report "few related functional deficits;" normal neurological function, coordination, and gait; "unremarkable" physical examinations, and "stable" liver function testing). In January 2022, Plaintiff allegedly "reported doing well overall with improved nausea, stable depression," and resolved or improving cirrhosis-related symptoms (*e.g.*, "resolved

ascites and edema"). [*Id.*]. Likewise, in the months leading up to Plaintiff's filing of her SSDI application, "she reported having some nausea but no vomiting" or "occasional vomiting over a few days" as well as "no abdominal pain." *See* [*id.* at 25–26] (summarizing January 2022, June 2022, March 2023, and April 2023 medical reports).

With regard to Plaintiff's anxiety and depression, ALJ Hurley notes that Plaintiff originally reported "poor concentration and tearfulness." [*Id.* at 26] (summarizing April 2021 medical report). However, shortly thereafter, Plaintiff exhibited "normal speech, thought content, and judgment;" "showed calm and cooperative attitude with normal grooming and hygiene;" and "show[ed] intact cognition despite persistently anxious and depressed moods." [*Id.*] (discussing 2021 medical examinations). According to ALJ Hurley, "[t]hese findings remained stable during subsequent exams" and Plaintiff's mental status findings were "frequently unremarkable." [*Id.*].

ALJ Hurley also considered the physical and mental assessments of Drs. Curry, McIver, Fahey, Sinha, and Rehman as well as that of PA-C Rourke. [*Id.* at 26–28]. He found that most of these opinions were inconsistent with the longitudinal medical record and therefore "not persuasive." *See* [*id.*].

With the aforementioned assessments, testimony, and medical records in mind, ALJ Hurley determined that Plaintiff can perform "light work" subject to certain limitations.[2] [*Id.* at 24]. Specifically, ALJ Hurley found that Plaintiff can:

> lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for about 6 hours; sit for about 6 hours; and occasionally climb ramps, stairs,

---

[2] The SSA defines "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

> ladders, ropes, or scaffolds. Se is able to understand and remember simple and some more detailed instructions; able to maintain attention, concentration, persistence, and pace on simple tasks for 2-hour periods over an 8-hour workday, 5 days per week, 40 hours per week; able to adapt to occasional simple, minor changes in work settings and routines; able to avoid ordinary hazards; able to set simple work-related goals; and travel independently.

[*Id.*].

Having determined that Plaintiff has the RFC to perform light work, ALJ Hurley next assessed whether she is capable of performing the duties required of her previous jobs. *See* [*Id.* at 28]. He found that, although Plaintiff's past work experience as a bookkeeper, data entry clerk, and office manager are predominantly sedentary jobs requiring an RFC equivalent to light work or less, they each require some degree of skill that precludes Plaintiff from performing those jobs in her current state. [*Id.*] ("The vocational expert testified that these past jobs are all precluded by the claimant's residual functional capacity. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.").

Because ALJ Hurley could not make a definitive disability determination at Step 4, he proceeded to Step 5. At this final step, an ALJ is required to consider a claimant's RFC, age, education, and work experience to determine whether that claimant is capable of performing any other work. [*Id.* at 28–29]. If a claimant has the RFC to perform the full range of light work, Medical-Vocational Rule 202.21 requires a finding of "not disabled." [*Id.* at 29]. However, as is the case here, when a claimant's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations, the examiner must consider to what extent these limitations erode the occupational base. [*Id.*].

According to ALJ Hurley's decision, impartial vocational expert Amy Leopold ("VE Leopold") testified that an individual with Plaintiff's vocational profile "would be able to perform

the requirements of representative occupations such as price marker . . . mail sorter . . . and clerical sorter," and that thousands of these jobs exist in the national economy. *See* [*id.*]. In light of this testimony, ALJ Hurley determined that Plaintiff is capable of working in these types of roles and rendered a finding of not disabled. [*Id.*] ("Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate . . . .").

### 4.    **Appeal #3: The Appeals Council**

Plaintiff filed her third appeal on March 18, 2024. [Doc. No. 14-5 at 93–98]. On November 27, 2024, the Appeals Council declined to review her application, thus making the ALJ's decision final for purposes of judicial review. [Doc. No. 23 at 2].

### 5.    **Appeal #4: The Present Action**

Having failed to receive the result she desires after three appeals, Plaintiff now brings her fourth and final appeal to this Court. Plaintiff commenced this action on January 24, 2025. [Doc. No. 1].

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the United States District Courts have the authority to affirm, modify, or reverse a decision of the Commissioner, with or without remanding the cause for a rehearing. The Commissioner's findings are conclusive if (1) they are supported by substantial evidence; and (2) the Commissioner has applied the correct legal standard. 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001).

Substantial evidence review is "deferential"; "though 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003)). The Commissioner's factual findings are supported by substantial evidence "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." *Id.* (quoting *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (per curium)). The reviewing court is not to "reweigh the evidence or substitute its judgment for that of [the Commissioner]." *Colon v. Sec'y of Health & Hum. Servs.*, 877 F.2d 148, 153 (1st Cir. 1989).

The ALJ's decision is not conclusive when it is "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Sacilowski v. Saul*, 959 F.3d 431, 437 (1st Cir. 2020). Accordingly, the reviewing court can only reverse the ALJ's decision in the "unusual case" in which "the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or deny benefits." *Seavey*, 276 F.3d at 11. If, on the other hand, an "essential factual issue has not been resolved . . . and there is no clear entitlement to benefits, the court must remand for further proceedings." *Id.*

## III.    DISCUSSION

Plaintiff's motion challenging the denial of SSDI benefits attacks the ALJ's determination that Plaintiff's RFC permits her to perform "light work." *See generally* [Doc. Nos. 18, 24]. Plaintiff alleges that the ALJ committed at least two errors in reaching that determination. First, Plaintiff alleges that the ALJ incorrectly assessed the persuasiveness of medical opinion evidence. Second, Plaintiff argues that the ALJ ignored evidence of Plaintiff's non-exertional limitations.

For the reasons that follow, I agree-in-part and disagree-in-part and find that a remand is warranted.

### A.    Persuasiveness Of Plaintiff's Medical Opinion Evidence

Numerous medical providers and disability consultants reported or opined on matters relating to Plaintiff's health and/or limitations. *See* [Doc. No. 14-3 at 26–28]. In determining Plaintiff's RFC, the ALJ assessed the level of persuasiveness to afford each piece of medical opinion evidence. *See* [*id.* at 26] ("Dr. Curry's opinion is partially persuasive."); [*id.*] ("[Dr. McIver's] opinion is not persuasive."); [*id.* at 27] ("Dr. Fahey's opinion is not persuasive."); [*id.*] ("PA-C Rourke's opinion is not persuasive."); [*id.* at 28] ("[DDS] Consultant Sinha's opinion is persuasive . . . ."); [*id.*] ("[DDS Consultant] Rehman's opinion . . . is not persuasive."). Plaintiff argues that the ALJ's finding that PA-C Rourke's functional assessment is "not persuasive" is based upon errors of law and is not supported by substantial evidence. [Doc. No. 18 at 9–11].

In assessing persuasiveness, an examiner shall not "defer or give any specific evidentiary weight, including controlling weight," to medical opinions. 20 C.F.R. § 404.1520c(a). Instead, persuasiveness is determined by consideration of five factors: (1) the relevance of the objective medical evidence cited by the medical professional to support the professional's opinion ("supportability"); (2) how consistent the opinion is with all of the evidence from both medical and non-medical sources ("consistency"); (3) the length of treatment relationship, frequency of examinations, purpose of treatment relationship, and extent of the relationship ("relationship with the claimant"), (4) the relevance of the medical professional's specialized education or training ("specialization"), and (5) any other factors that tend to support or contradict a medical opinion or prior administrative medical finding ("other factors"). *Id.* at § 1520c(c)(1)–(5). An examiner is required to articulate the persuasiveness of a given medical opinion and to explain how that finding is supported by the first two factors: supportability and consistency. *Id.* at § 1520c(b)(2). In most

11

circumstances, the examiner may, but need not, explain how he considered the remaining three factors. *Id.*

PA-C Rourke assessed Plaintiff's physical RFC resulting from her cirrhosis diagnosis. *See* [Doc. No. 15-2 at 174–178]. In her report, PA-C Rourke identifies Plaintiff's symptom onset date (*i.e.*, Sept. 2019); her symptoms (*i.e.*, "abdominal pain, weight loss, vomiting"); the frequency and location of Plaintiff's pain (*i.e.*, "intermittent abdominal pain"), and Plaintiff's medication and associated side effects (*i.e.*, "Lactulose [medication] may cause nausea and diarrhea"). [*Id.*]. PA-C Rourke's assessment was completed May 2023 and concluded that Plaintiff's cirrhosis prognosis was "good." [*Id.*]. In addition, PA-C Rourke completed a checklist evaluation of Plaintiff's ability to perform certain physical activities, attend work, and handle environmental restrictions. *See* [*id.*].

PA-C Rourke concluded that Plaintiff has a limited ability to sit, stand, or walk during a workday; requires both frequent and long breaks; and would be absent from work at least two days per month. *See* [*id.*]. She also determined that Plaintiff can occasionally perform most physical functions (*e.g.*, reaching, handling, feeling, pushing/pulling); can rarely lift and carry 10 pounds; and can rarely perform most postural movements (*e.g.*, bending, squatting, crawling, balance). [*Id.*]. PA-C Rourke did not cite to any medical evidence to support her assessment or submit additional materials to supplement the checklist assessment form. *See* [*id.*]. Additionally, PA-C Rourke did not answer Question 16 on the assessment form concerning whether any other limitations would affect Plaintiff's ability to work at a regular job on a sustained basis. *See* [*id.* at 177].

ALJ Hurley found that PA-C Rourke's opinion is "not persuasive." [Doc. No. 14-3 at 27]. He noted that there is nothing in the record to suggest that Plaintiff's cirrhosis would limit her ability to lift 10 pounds, particularly given PA-C Rourke's determination that Plaintiff's reaching,

pulling, and pushing abilities are not significantly limited. *See* [*id.*] ("There is no objective indication that cirrhosis would cause sedentary lifting restrictions (no more than 10 pounds). Her reaching and manipulation abilities are not limited to a significant degree."). The ALJ also determined that Plaintiff's physical limitations and gastrointestinal issues are uncorroborated by physical examinations or laboratory results. *See* [*id.*] ("The claimant's fatigue and intermittent nausea and vomiting episodes would not reasonably be expected to limit her sitting and standing abilities to such a significant degree. The exam results discussed above show no loss of motor strength or ambulatory dysfunction."). Accordingly, he determined that PA-C Rourke's opinion is "inconsistent with the longitudinal treatment record and unsupported by objective findings." [*Id.*].

The ALJ's determination is supported by substantial evidence. As Defendant correctly notes, "Ms. Rourke's check-the-box form provides no reference to any objective evidence supporting the restrictions in her assessment." [Doc. No. 23 at 10]; *see* [Doc. No. 15-2 at 174–178]. Under First Circuit precedent, the conclusory nature of PA-C Rourke's assessment undermines its persuasiveness. *See Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)) ("Dr. Kessler provided no discussion or analysis of his own prior observations, as the ALJ noted when she described his submission as merely checking the right boxes. That itself goes a long way toward supporting the ALJ's determination to accord Dr. Kessler's opinion little weight. . . The ALJ need not accept an opinion of a physician-even a treating physician-if it is conclusory and brief and is unsupported by clinical findings.").

On appeal, Defendant notes that "Ms. Rourke's own treatment notes do not support" her RFC assessment, particularly Plaintiff's "excessive lifting restrictions." [Doc. No. 23 at 10]. In both January 2021 and March 2021, PA-C Rourke found that Plaintiff had no restrictions and could return to work. [Doc. No. 15-1 at 11] (January 2021: "She does not have any restrictions, but still

has some lingering symptoms. Part-time [work] is suggested . . . ."); [*id.* at 25] (March 2021: "She does not have any restrictions, but still has some lingering symptoms and changes on medications. Part-time [work] is suggested . . . ."). Plaintiff does not dispute the content of PA-C Rourke's treatment notes. *See* [Doc. No. 24 at 7] (failing to challenge Defendant's characterization).

Instead, Plaintiff argues that these same treatment notes establish supportability and consistency because they also acknowledge that Plaintiff was suffering from cirrhosis-related symptoms during 2021. [*Id.*] ("The ALJ's assessment of Ms. Rourke's opinion acknowledges treatment notes from Ms. Rourke where the Plaintiff continued to complain of these symptoms showing supportability and consistency.").

This argument fails to persuade me for at least two reasons. First, supportability is determined by reference to "objective medical evidence." 20 C.F.R. § 404.1520c(c)(1). "Objective medical evidence" is evidence obtained from clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1529(c)(2); SSA Program Operations Manual System ("POMS") DI 24503.010(A) ("Objective medical evidence does not include symptoms, diagnoses, or medical opinions."). Objective medical evidence is used to assess the intensity and persistence of symptoms and the effect those symptoms might have on an individual's ability to perform work. 20 C.F.R. § 404.1529(c)(2). PA-C Rourke's treatment notes document only the existence of Plaintiff's symptoms but are devoid of reference to any clinical or laboratory tests. *See* [Doc. No. 15-2 at 174-178]. Second, in both January and March of 2021, PA-C Rourke found that Plaintiff could return to work *despite the fact she was suffering from symptoms*. [Doc. No. 15-1 at 11, 25]. In other words, on multiple occasions in 2021, PA-C Rourke determined that Plaintiff's symptoms do not cause functional limitations impacting her ability to perform work. *See* [*id.*]. Thus, it cannot be said that PA-C Rourke's 2021 treatment notes support her final RFC assessment.

14

The ALJ also alluded to the numerous physical examinations and laboratory results performed by Plaintiff's other medical examiners that fail to (1) identify the cause or measure the severity of Plaintiff's symptoms or (2) measure how those symptoms affect Plaintiff's ability to work. *See* [Doc. No. 14-3 at 24–26] (listing results of physical examinations and lab tests occurring between December 2020 and May 2023 that were normal or otherwise unremarkable). Similarly, several of Plaintiff's clinical and lab tests appear to show an improvement in the severity of her cirrhosis. *See* [*id.*] (summarizing results of physical examinations and lab tests occurring between January 2022 and May 2023 that indicate an improvement in Plaintiff's physical health).

Plaintiff does not challenge the validity or utility of these underlying examinations and tests. *See* [Doc. No. 18 at 11; Doc. No. 24 at 7]. Instead, she alleges that the ALJ "substitute[ed] his lay opinion for that opinion of [Plaintiff's] medical provider in error of law." [Doc. No. 18 at 11]; *see* [Doc. No. 24 at 7] ("The Defendant argues that their interpretation of medical findings, such as endoscopic examinations and CT scans, should justify the finding that Ms. Rourke's opinion is not persuasive. This is an attempt to decipher medical findings."). But Plaintiff identifies zero instances in which the ALJ assessed the raw data from Plaintiff's various examinations and tests. *See generally* [Doc. Nos. 18, 24]. And the evidence to which the ALJ cited does not support Plaintiff's contention. *See, e.g.*, [Doc. No. 15-2 at 308] (nurse practitioner Brenna Curran summarizing results of CT scan: "No evidence of active gastrointestinal bleeding"); [Doc. No. 14-3 at 25] (ALJ Hurley: "an abdominal CT shows no evidence of active gastrointestinal bleeding").

In addition, PA-C Rourke's RFC assessment is inconsistent with other medical sources. As an initial matter, it is inconsistent with PA-C Rourke's own 2021 determinations that Plaintiff could work without any restrictions. *See* [Doc. No. 15-1 at 11, 25]. It is also inconsistent with certain portions of Dr. Curry's 2022 functional assessments, such as his finding that Plaintiff could

15

occasionally lift up to 20 pounds and carry 10 pounds and occasionally perform certain postural movements (*e.g.*, bend, squat, crawl). *See* [Doc. No. 14-3 at 26] (summarizing findings). It is similarly inconsistent with Dr. Sinha's 2021 assessment that Plaintiff can perform light work. *See* [Doc. No. 14-4 at 2–9]. Finally, it is inconsistent with Plaintiff's medical results from as recently as 2023. *See* [Doc. No. 15-2 at 189]. For example, in April 2023, Dr. Peter McIver reported that, despite suffering from recurrent nausea and vomiting over the last few months and purportedly losing 20 pounds as a result, Plaintiff "has had no abdominal pain . . . no diarrhea or bowel changes . . . and [she] has had a normal upper endoscopy, normal colonoscopy, normal abd/pelvic Ct scan and normal labs." [*Id.*].

A reasonable mind, reviewing the evidence in the record as a whole, could accept the cursory nature of PA-C Rourke's RFC assessment, the lack of objective medical evidence supporting that assessment from throughout the entirety of the disability period, and the conflicting functional assessments of other physicians as adequate evidence to support the ALJ's determination that PA-C Rourke's functional assessment is not persuasive.

Plaintiff's remaining arguments fail to persuade me otherwise. Plaintiff argues that the ALJ's persuasiveness determination should be vacated because he failed to articulate why PA-C Rourke's assessment that Plaintiff "would be absent from work two days a month and have to take 15–30-minute breaks every 3-4 hours during a workday is not supported by the medical records." [Doc. No. 18 at 11]; *see also* [Doc. No. 24 at 5] ("The ALJ must explain the persuasiveness of all medical opinions from all medical sources and must explain supportability and consistency of those sources."). But this argument is unavailing because the caselaw in this jurisdiction is clear that the ALJ's written decision need not address every piece of evidence submitted by a party. *Dias v. Colvin*, 52 F.Supp.3d 270, 286 (D. Mass. 2014) (quoting *NLRB v. Beverly Enterprises-*

*Massachusetts, Inc.*, 174 F.3d 13, 26 (1st Cir. 1999)) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *Cardoza v. O'Malley*, No. 23-cv-11266, 2024 WL 4648254, at *14 (Sept. 10, 2024) (collecting cases).

Plaintiff also argues that the ALJ's determination is unsupported by substantial evidence because he failed to discuss persuasiveness factors 3–5 when evaluating the medical opinions of the three providers who performed functional assessments: PA-C Rourke, Dr. Sinha, and Dr. Curry. [Doc. No. 24 at 5–6]. Plaintiff correctly notes that "[w]hen two or more medical opinions or prior administrative findings about the same issue are equally well-supported and consistent but not exactly the same, the ALJ is required to discuss the other factors besides supportability and consistency." [*Id.*] (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)). Plaintiff then argues that the ALJ's failure to do so constitutes reversible error. *See* [*id.* at 6]. This argument is also unsuccessful. The regulations only require that an ALJ articulate how they considered the other persuasiveness factors if the ALJ also determined that each opinion was equally well-supported and consistent with the record. 20 C.F.R. §§ 404.1520c(b)(3). Because that precondition was not met (*i.e.*, because the ALJ found that the three medical opinions were not equally well supported or consistent), *see* [Doc. No. 14-3 at 26–28], the ALJ was not required to address the other persuasiveness factors.

Finally, Plaintiff argues that the ALJ's persuasiveness determination is incorrect because there is other evidence in the record that supports and is consistent with PA-C Rourke's assessment. *See* [Doc. No. 24 at 7] ("The claimant testified at hearing [sic] that she had lost a significant amount of weight and had fatigue and weakness, this could support Ms. Rourke's finding of a lifting restriction."). But this argument reflects a misunderstanding of the legal standard and therefore

fails. *See Lagace v. Saul*, 537 F.Supp.3d 141, 155 (D. Mass. 2021) ("[T]he issue is not whether there is some evidence in the record supporting the plaintiff's allegations—there usually is—but whether substantial evidence supported the ALJ's findings."); *Robles v. Barnhart*, No. 04-CV-11012, 2005 WL 1773963 at *4 (D. Mass. July 22, 2005) ("If substantial evidence exists to support the ALJ's determination, the Court must accept his findings as conclusive even if the record arguably could justify a different conclusion").

### B.    Plaintiff's Non-Exertional Limitations

Plaintiff alleges that she suffers from gastrointestinal symptoms that cause non-exertional limitations[3] and argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to consider evidence of those non-exertional limitations. *See* [Doc. No. 18 at 5–6, 9].

At the June 2023 hearing, Plaintiff testified that she suffers from nausea, vomiting, fatigue, abdominal pain, constipation, diarrhea, and frequent bowel movements. [*Id.* at 5]. She also testified that she uses the bathroom approximately 15–20 times per day, it takes her about 15 minutes to use the bathroom, she suffers from bouts of vomiting that may last up to 2 days, she requires up to a week to recover from those bouts of vomiting, and that she lost approximately 25 pounds during the preceding 2 months due to those gastrointestinal issues. [*Id.*]. She further testified that these gastrointestinal issues had "become a huge problem" and also explained that she was laid off by her prior employer in 2020 due to her absenteeism. [*Id.*].

---

[3] A claimant's impairments and resulting symptoms may cause functional limitations that limit that person's ability to meet certain job demands. 20 C.F.R. § 404.1569a(a).  A non-exertional limitation affects an individual's ability to meet the non-strength related demands of a job. *Id.* at § 404.1569a(c).

Plaintiff also submitted evidence from PA-C Rourke and VE Leopold regarding the limiting effects of her gastrointestinal symptoms.[4] [*Id.* at 6]. Plaintiff cites to VE Leopold's testimony that (1) unscheduled breaks lasting 15 minutes, taken every hour, would not be tolerated at any exertional level and would preclude all employment in the national economy and (2) no employer would tolerate an individual missing two days of work per month. [*Id.*].

Social Security Ruling 16-3p requires that an ALJ consider a claimant's evidence and testimony regarding subjective symptoms and their effect on RFC. Soc. Sec. Ruling 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims ("SSR 16-3p") (S.S.A. Mar. 28, 2016) ("In determining whether an individual is disabled, we consider all of the individual's symptoms . . . and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."). To evaluate a claimant's symptoms, the ALJ must follow a two-step process. *Id.* First, the ALJ must determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* Second, he must evaluate the intensity and persistence of an individual's symptoms and determine the extent to which an individual's symptoms limit her ability to perform work-related activities for an adult or to function independently. *Id.*

To assess intensity and persistence, the ALJ must consider whether the objective medical evidence supports the claimant's statements about their symptom(s) and the limiting effects therefrom. *Id.* "If [the ALJ] cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then [he must] carefully consider other evidence in the record in reaching a conclusion," such as an individual's testimony and the side

---

[4] For the reasons discussed above, ALJ Hurley's finding that PA-C Rourke's RFC assessment was "not persuasive" is supported by substantial evidence. Therefore, it is proper to disregard it in assessing whether ALJ Hurley appropriately considered evidence of Plaintiff's non-exertional limitations.

effects of medication an individual takes. *Id.* ("Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques."). If a claimant offers their own statements into the record, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.*

If the ALJ decides that the claimant's testimony is inconsistent with the record, he must articulate specific and adequate reasons for that holding. *Cf. Lopez v. Kijakazi*, 704 F.Supp.3d 279, 287 (D. Mass. 2023); *Da Rosa v. Sec'y of Health and Hum. Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) ("On remand, the ALJ is still free to find that appellant's testimony regarding his pain and exertional limitations [are inconsistent with the record]. This result, however, must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining [the Appellant's testimony was inconsistent]."). "This is so notwithstanding the usual rule that an ALJ 'is not required to … discuss every piece of evidence in the record.'" *Lopez*, 704 F.Supp.3d at 287 (quoting *Ramos v. Kijakazi*, 596 F.Supp.3d 246, 253 (D. Mass. 2022). "The lack of a sufficiently explicit [inconsistency] finding becomes a ground for remand when [consistency] is critical to the outcome of the case." *Id.*; *see also* SSR 16-3p ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

Here, the ALJ found that Plaintiff's impairments produce gastrointestinal symptoms such as nausea, vomiting, diarrhea, and abdominal pain. *See* [Doc. No. 14-3 at 22–28]. Nevertheless, the ALJ's determination at Step 2 of the 5 Step process regarding whether Plaintiff has any medically severe impairments is silent as to whether Plaintiff's gastrointestinal symptoms affect

her ability to concentrate, persist, or maintain pace, including her ability to be present. *See* [*Id.* at 23]. At Step 4, the ALJ mentions that Plaintiff suffers from nausea, vomiting, dizziness, and fatigue, and he acknowledges that Plaintiff needs to use the restroom 15–20 times per day. [*Id.* at 25]. He further notes that Plaintiff reported improved nausea, vomiting, and/or abdominal pain during certain medical visits in 2022 and 2023. [*Id.* at 25–26]. However, there is no discussion of the impacts of Plaintiff's absenteeism resulting from her needing to use the bathroom approximately every 1–2 hours, Plaintiff's hearing testimony regarding her multi-day bouts of vomiting and her need to spend a week recovering, the recent medical signs corroborating Plaintiff's statements about intensity and persistence of her gastrointestinal symptoms (*e.g.*, Dr. McIver's April 2023 notes that Plaintiff has been suffering from nausea and vomiting for months and lost 20 pounds, [Doc. No. 15-2 at 189]), and VE Leopold's testimony that an individual needing to take breaks every hour would not be able to work at any exertional level. *See* [Doc. No. 14-3 at 24–28].

Considering these various pieces together, it would not be unreasonable to infer that the ALJ considered the evidence Plaintiff proffered at the hearing regarding her gastrointestinal symptoms but ultimately decided to discredit that evidence in light of other evidence in the record. However plausible this reading may be, though, the record falls short of being "obvious as to the [inconsistency] finding." *See Lopez*, 704 F.Supp.3d at 288 (citation omitted). Even if the ALJ considered this evidence, he did not articulate "specific reasons for the weight given to the individual's symptoms" as he was required to do. SSR 16-3p. Consequently, the record is not clear whether the ALJ impermissibly ignored evidence—namely, Plaintiff's testimony, medical signs corroborating Plaintiff's gastrointestinal symptoms, and VE Leopold's testimony—in making his

findings of fact. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact . . . are not conclusive when derived by ignoring evidence[.]").

Because I cannot be certain the ALJ adequately considered the above evidence, and thus that his findings are supported by substantial evidence in the record, it is necessary to remand the matter for clarification. On remand, the ALJ must (1) indicate whether he considered all of the limitations caused by Plaintiff's gastrointestinal symptoms, including their effects on pace, persistence, and ability to be present; (2) what weight he assigned to each symptom; and (3), if he afforded little or no weight to a particular symptom, what evidence he relied on in doing so. If the ALJ did not consider all of Plaintiff's gastrointestinal symptoms, the ALJ must render new findings of fact.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse or remand. [Doc. No. 17], is granted and the matter is <u>REMANDED</u>. The Commissioner is instructed to consider how Plaintiff's non-exertional limitations resulting from her gastrointestinal issues affects her ability to perform work in the national economy according to the above the instructions.


SO ORDERED.

/s/ Myong J. Joun
United States District Judge